## THE WALTER GREEN.

## THE BURNS BROS. NO. 34.

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

### No. 171.

**Shipping ☞79—Barge, which put line on string of barges to save herself, held liable for resulting damage.**

A barge, which to save herself from destruction after she had been loosened from her moorings by a large ice floe, placed a line on a string of barges fastened to an adjoining pier, as a result of which the line from those barges to the pier parted, is liable for the resulting damage.

Appeal from the District Court of the United States for the Southern District of New York.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Libel by John J. Hammond against the barges Walter Green and Burns Bros. No. 34. Decree for libelant against the barge Walter Green, and the claimant of that barge appeals. Affirmed.

The following is the opinion of Learned Hand, District Judge, in the court below:

This case is even more confused than the usual case, but at the same time I attribute the confusion largely to the fact that the occasion was one of considerable danger and the witnesses' attention could not be directed very critically to what was going on. I have therefore, in these cases in which there is a conflict of testimony, to judge a good deal on the probability of the situation. Some of the facts are settled beyond dispute. The Walter Green lay nearest to the pier end and the Burns Bros. outside her. About 3 o'clock on the afternoon of the 30th of December a large floe of ice—the second one of its character, which one of the witnesses described as extending from shore to shore—moved down on the ebb tide, and this motion broke loose, first the Burns Bros., and, second, the Green. There is no testimony that the Burns Bros. broke loose before that. Their berths had been recognized as being very dangerous berths all through that day. The Burns Bros. had been injured by the ice, and her middle compartment was filled; she was in a dangerous condition. It was the purpose of the Burns Bros. to get inside the slip, because they could get no tug to save her, and I must conclude, from the purposes of the Burns Bros., and from some other circumstances that I will mention, that at the time she tried to go in the slip the four boats which had been on the north side of the pier still remained in place alongside, had not broken loose, and were not hanging across the pier corner. In the first place, if they had been so hanging, it would have been useless to pass a line to them, because it would not have been of any service in warping the Burns into the slip. The outer of these four boats, which was the No. 76, itself lay further out than any of the rest. She was not bow and bow with the McCann, which lay next to her. If the Frank, the McCann and the No. 76 had broken loose and were angling on the pier end, the stern of the No. 76 would have been well below the north side of the lower pier and well out in the ice, and she would have offered no possible means for warping in the Burns. So I cannot accept that as probable. The contrary is sworn to by Cartman and Smith, and although Southard and McGraw say that they had broken loose, I must choose between those two stories, and I choose the one which says that they still lay alongside.

Take another reason for the same conclusion: What could possibly have moved those three boats away from their safe berth? Concededly the ice did not bother them; the ice did not come inside the pier ends. What could have been the reason for their breaking loose and hanging in an extraordinary position, and in a very dangerous position, where they were? Something must have wrenched them off; there must have been some violence to accomplish this. Now, we have an adequate explanation of the violence subsequent to this time; that is, the momentum of, first, the Burns, or, second, the Green, hanging onto the projecting end of the No. 76. That is an adequate cause, but there is no other adequate cause that I can see. For all these reasons, therefore, I do not accept that part of the story. No one says that the Burns broke loose these three boats; if any boat did it, it was the Green. Everybody agrees in that, and so I exculpate the Burns, because there is no evidence to hold her.

The question then remains of the Green. Everybody agrees—except McGraw, who did not see it—that at some time there was a line between the No. 76 and the Green. There are varying accounts as to what happened while that line was on, but everybody agrees that there was a line on, and two of the three witnesses say it was that line which caused the three boats to break loose by parting the bowline of the Frank. This was a six-inch line, but after the Green swung on it it had to carry the whole weight of the Green, incumbered as it was by ice, and such weight as there was of the other three

boats. Probably the weight of the other three boats was not great, because the tide was ebb and pressed the boats against the ends of the pier. But there was plenty of weight in the Green, and the ice with which she was incumbered did break said line, and the only reasonable conclusion I can come to is that that was what did break the bowline of the Frank. The situation was subsequently saved, because the three boats fell forward on the pier end and another bowline was got out. In this Cartman—a particularly honest witness—helped Smith; he helped put out the second bowline, and so the flotilla held. The question that comes is: If these are the facts, whether there is a fault in the Green. Mr. Zabriskie says there is no evidence as to who put the line out. That is true; there is no direct evidence on that, but I think we must agree that the line was put out with the consent and by the direction of the master of the Green, though he does disclaim it. There was no one else there on his boat who could pass a line. I do not know how the line could have got out unless he passed it. Certainly he must have been in an acquiescent attitude toward that fact, and I think I am justified in the conclusion that he did pass the line, and so I find. Now, if he did it, he did it in an effort to save his boat, and that was very commendable. I agree that that was his duty, but in so doing he imperiled the other boats to whom he tied, and if he saved himself in that way it is part of his expense of saving that he should make good the damage. Even so, it was a proper thing to do, because he might well have been lost if he had not held fast, and it was conduct which we doubt he would repeat.

It is suggested that it was a case of inevitable accident, but that was not so. His breaking loose was a case of inevitable accident, but his fastening a line to another boat to save himself is not an inevitable accident. One is tempted almost to speak of it as in the character of salvage, but of course it is not that. It is a damage inflicted on another boat in an effort to save a larger value, and as such it forms a charge against the property that has been saved. It is none the less a tort because it is a moral and most excusable tort, so it necessarily follows that the libelant will take a decree against the Green, but the libel against the Burns will be dismissed, without costs.

Hyland & Zabriskie, of New York City (Nelson Zabriskie, of New York City, of counsel), for appellant.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for appellee Burns Bros.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellee Hammond.

Before WARD, HOUGH, and MANTON, Circuit Judges.

PER CURIAM. Decree affirmed.